**UNITED STATES of America,**
**Libelant,**

**v.**

**An Article of Device . . . DIA-PULSE MANUFACTURING CORPO-RATION OF AMERICA, Claimant.**

**Admiralty No. 4818.**

United States District Court
D. Connecticut.

Jan. 10, 1967.

Jon O. Newman, U. S. Atty., Hartford, Conn., for libelant.

Milton A. Bass, of Bass & Friend, New York City, for claimant.

TIMBERS, Chief Judge.

In this in rem action pursuant to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301–392, charging misbranding of an article known as "Diapulse",[1] claimant moves for an injunction to restrain the Food and Drug Administration (FDA) from issuing news releases and other public statements regarding the instant action on the ground that such injunction is necessary to protect the rights of claimant and to assure a fair trial.

The questions presented essentially are whether this Court has the

power to issue such an injunction; and, if so, whether a sufficient showing has been made here to warrant such an injunction. The Court holds that it has the power but declines to exercise it on the showing here made. Accordingly, claimant's motion for an injunction is denied.

Despite claimant's sweeping allegations of various "press releases" and a "tirade of publicity by newspaper and radio" emanating from the FDA regarding the instant action, the record before the Court discloses only the following two instances of public mention of the *Diapulse* case by the FDA or by anyone connected with the FDA:

(1) In March 1966, the FDA, pursuant to 21 U.S.C. § 375(b),[2] issued its "Report On Enforcement And Compliance". Of the 72 pages in this report, 2 pages are devoted to the *Diapulse* case. These 2 pages consist of a reasonably factual summary of the claims of the parties—certainly well within the authority granted by Congress in 21 U.S.C. § 375(b) to the Secretary of HEW to disseminate information and report the results of investigations.

(2) On October 7, 1966, James L. Goddard, M.D., Commissioner of Food and Drugs, delivered a speech in Chicago to the Congress of Medical Quackery, sponsored by the American Medical Association. The speech consisted of 13 typewritten pages, included in which was the following 4 line reference to the *Diapulse* case:

"You probably know of the 'Diapulse' case. This device, seized in Atlanta, Georgia, used electrical impulses to supposedly treat

---

1. For a brief statement of the nature of the action and prior proceedings, see 41 F.R.D. 46.

2. Section 705(b) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 375 (b), provides:
   "The Secretary may also cause to be disseminated information regarding

food, drugs, devices, or cosmetics in situations involving, in the opinion of the Secretary, imminent danger to health or gross deception of the consumer. Nothing in this section shall be construed to prohibit the Secretary from collecting, reporting, and illustrating the results of the investigations of the Department."

arthritis, hypertension, sinusitis, middle ear infections, TB, syphillis, toxemia, asthma, hepatitis, diabetes, gangrene, pneumonia, and other conditions."

Dr. Goddard's remarks about Diapulse amounted to no more than a factual statement of some of the claims attributed to the device.

The Chief of Press Relations for the FDA, in an affidavit filed with the Court on the instant motion, states that he is responsible for the dissemination of all press releases issued by the FDA; that no press release was issued when the Diapulse device was seized in Atlanta, Georgia, or when the instant action was commenced in December 1965; that the "Report On Enforcement And Compliance", referred to in paragraph (1) above, ceased to exist in November 1966; that a press release issued by the FDA in conjunction with Dr. Goddard's speech, referred to in paragraph (2) above, contained no mention of the *Diapulse* case; and that the FDA has no present plans to issue any further press releases concerning this action.

The president of Diapulse Manufacturing Corporation of America, in an affidavit filed with the Court on the instant motion, alleges that "the press releases by the Food and Drug Administration with respect to the instant case is part of a deliberate, calculated plan to prejudice claimant's defense herein, to damage claimant's reputation and business interests prior to any adjudication thereof, and to deny claimant a fair and impartial trial on the merits." In support of these bare, conclusory allegations by an officer of a party to this action, no proof whatsoever has been offered.

The Court finds that claimant has failed to establish any irreparable injury or any threat thereof. Accordingly, upon established equitable principles, its motion for an injunction must be denied.

■ Counsel in their briefs have debated at length whether the instant in rem action is quasi-criminal in nature for the purpose of applying those safeguards regarding pre-trial publicity which are applicable to criminal proceedings. This debate, while interesting, is beside the point, in the opinion of this Court. A United States Court undoubtedly has inherent power—indeed, is under a plain duty—to take whatever action may be necessary and appropriate to assure a fair trial, regardless of how the proceedings are labeled: criminal, civil, admiralty or otherwise. The assurance of a fair trial includes safeguarding against prejudicial pre-trial publicity, regardless of the type of action. Such power may be exercised by injunction, by contempt proceedings or by such less drastic remedies as change of venue and continuance. The power is there. It has been used without hesitation in the past and will continue to be used—*upon a proper showing.*

The instant case is a striking example, however, of a situation where it would be most inappropriate for the federal judiciary—under the guise of exercising its undoubted power to safeguard parties to a pending proceeding against prejudicial pre-trial publicity—to attempt to muzzle an agency of the executive branch of the government in performing a duty expressly entrusted to it by Congress in 21 U.S.C. § 375(b), including the dissemination of information and reporting the results of investigations. The only evidence before this Court of public mention of the *Diapulse* case by the FDA or by anyone connected with the FDA—the Report On Enforcement And Compliance of March 1966 and Dr. Goddard's speech of October 7, 1966—aside from consisting of factual statements of claims in no way prejudicial to claimant, reflect a commendable performance by the FDA of a public duty imposed by Congress in disseminating information, whether urging "the use of certain treatments" or warning "the public against the use of certain treatments". Hoxsey v. Folsom, 155 F.Supp. 376, 378 (D.D.C.1957).

The foregoing embrace the Court's findings of facts and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

Claimant's motion for injunction denied.